IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JACK BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-08-0372 |
| | § | |
| BAYLOR HEALTHCARE SYSTEM, | § | |
| | § | |
| *et al.*, | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

The plaintiff, Jack Brown, seeks reconsideration of one part of this court's April 15, 2009 Claim Construction Memorandum and Order, construing the term "portable processing means" in the single claim of U.S. Patent No. 4,857,713 (the "'713 Patent") as subject 35 U.S.C. § 112, ¶ 6. In addition to the arguments he raised earlier, Brown introduces, for the first time, a declaration from an expert and evidence from the prosecution history of the '713 Patent. Brown argues that the patent examiner revised the '713 Patent claim to its present form and the patent examiner's expertise creates a presumption that '713 Patent claim is valid. (Docket Entry No. 151). The defendants have responded. (Docket Entry No. 152).

Based on a careful review of the motion, the record, the arguments of counsel, and the applicable law, this court denies Brown's motion for reconsideration. The reasons are explained below.

**I.     Background**

The '713 Patent is directed to reducing errors in delivering medications, goods, services, or procedures to patients. Under the '713 Patent, when a health care worker gives a patient medications, goods, services, or procedures, the worker uses a portable barcode reader to scan a

barcode on the item and a barcode on the patient's hospital identification band. The system compares the two barcodes and uses the information contained in a "patient history file" and a "physician instruction file" to verify that the patient is receiving the correct medicine, service, good, or procedure, in the correct dose, and at the correct time. The system issues a warning if there is an error. The '713 Patent claims a "portable computer means" equipped with a "portable barcode reading means" that connects via "communication link means" to a "host computer means" that stores the patient history file and physician instruction file. The "portable processing means" at issue in this motion for reconsideration is a component of the "portable computer means."

The '713 Patent states that a "portable computer means comprises," in part:

> portable processing means for processing the bar codes read by said portable bar code reading means so as to determine if said identified medications, goods, services or procedures are permitted to be delivered to said identified patient, according to said patient history file and said physician instruction file in said portable memory means, and for updating said patient history file in said portable memory means if said identified medications, goods, services, or procedures are permitted to be delivered to said identified patient,
>
> wherein said determination requires that said identified medications, goods, services or procedures are related to said identified patient in said physician instruction file in the portable memory means and that said identified medications, goods, services or procedures would be delivered to said identified patient at an appropriate time according to when identified medications, goods, services or procedures were last delivered to the identified patient in the past as indicated in the patient history file in the portable memory means and according to the time interval in said physician instruction file in said portable memory means to grant permission to deliver said identified medications, goods, services or procedures, and portable display means for indicating the determination of said portable processing means,

(Docket Entry No. 132, Ex. A, col. 4 ll. 30–57).

Brown does not dispute this court's construction of the functions associated with "portable processing means." The functions recited for "portable processing means" in the '713 Patent claim include:

> processing the barcodes read by the "barcode reading means"; determining, by referencing the patient history file and the physician instruction file in the "portable memory means," whether the medications, goods, services or procedures identified by barcode are permitted to be delivered to the patient identified by barcode; reaching this determination by calculating the time elapsed since last delivery by referencing the patient history file and comparing this time to the prescribed time interval in the physician instruction file; displaying this determination through the "portable display means"; and updating the patient history file if the identified goods, services or procedures were delivered to the identified patient

(Docket Entry No. 148 at 36).

## II.     The Legal Standard for a Motion for Reconsideration

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004); *see also St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). But a court retains the power to revise an interlocutory order before the entry of judgment adjudicating all the parties' claims, rights, and liabilities, and may consider a motion to reconsider an interlocutory order so long as the motion is not unreasonably delayed. FED. R. CIV. P. 54(b); *see also Standard Quimica De Venezuela v. Cent. Hispano Int'l, Inc.*, 189 F.R.D. 202, 205 (D.P.R. 1999). "District court *Markman* . . . rulings in patent cases are interlocutory." *Forest Group, Inc. v. Bon Tool Co.*, No. H-05-4127, 2008 WL 2962206, at *4 (S.D. Tex. July 29, 2008). Motions for reconsideration from interlocutory orders are governed by the standards for Federal Rule of Civil Procedure 59(e). *T-M Vacuum Prods., Inc. v. TAISC, Inc.*, No. H-07-4108, 2008 WL 2785636, at *2 (S.D. Tex. July 16, 2008).

The grounds for granting a motion for reconsideration under Rule 59(e) include: "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or present manifest injustice." *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 128 S.Ct 2605, 2617 n.5 (U.S. 2008) (quoting 11 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2810.1, at 127–28 (2d ed. 1995)). "A Rule 59(e) motion is not a 'vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment' but instead has a 'narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Baldwin v. Layton*, 300 F. App'x 321, 323–24 (5th Cir. 2008) (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)).

### III. Analysis

Brown offers three arguments in support of his motion for reconsideration. First, he contends that this court erred in concluding that the term "portable processing means" does not overcome the means-plus-function presumption in 35 U.S.C. § 112, ¶ 6. Second, Brown contends that even if the term "portable processing means" does not overcome the means-plus-function presumption, this court erred in concluding that the specification of the '713 Patent does not disclose sufficient structure for "portable processing means." In support of this contention, Brown submits for the first time the declaration of Brian A. Berg, a software engineer who states that he was retained as an expert by Brown. Finally, Brown argues that he relied on the patent examiner's

expertise.  Brown introduces, for the first time, evidence from the prosecution history of the '713 Patent.

Each of these arguments is analyzed below.

### A. "Portable Processing Means" Does Not Overcome the Means-Plus-Function Presumption

Brown contends that "[i]t is clear that to one skilled in the art of computer programming that "processing," as used in the term "portable processing means," "refers to a processor – an integral part of a computer." But as this court explained in its April 15, 2009 order, the issue is not whether "processing means" has an understood meaning in the art, but whether "processing means," as understood in the art, connotes sufficient structure to perform the specific functions recited for that term in the patent claim.  A claim recites sufficient structure to overcome the means-plus-function presumption when "the claim language specifies the exact structure that performs the functions in question without need to resort to other portions of the specification or extrinsic evidence for an adequate understanding of the structure." *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259–60 (Fed. Cir. 2008).

The "portable processing means" described in the '713 Patent must perform the specialized functions of processing barcodes on patient wristbands and on labels for medications, goods, services, or procedures; reading patient history and physician instruction files; determining, based on these files, whether medications, goods, services, or procedures identified by the barcodes are permitted to be delivered to the particular patient identified by the wristband barcode; and determining the time for delivery of medications, goods, services, or procedures to a particular patient according to the time of last delivery as listed in the patient history file and according to the time interval prescribed in the physician instruction file. (Docket Entry No. 148 at 22).  There is no

5

evidence that "portable processing means," without more, would be understood by one skilled in the art to perform these specialized functions. "Processing means" in the '713 Patent describes a special purpose computer programmed to perform specialized functions. Because the general-purpose structure that "portable processing means" conveys to one of ordinary skill in the art would not accomplish these functions, "portable processing means" does not overcome the means-plus-function presumption.

As noted in this court's April 15, 2009 order, other cases have similarly held that the term "processing means" does not overcome the means-plus-function presumption when the claimed functions cannot be accomplished by the general-purpose structure the term connotes to one of ordinary skill in the art. *See Centillion Data Sys., LLC v. Convergys Corp.*, 529 F. Supp. 2d 982, 984–85 (S.D. Ind. 2008) (concluding that the term "data processing means" in a patent claiming the function of "generating and organizing" "summary reports" in a credit-card billing system did not overcome the presumption because the term merely identified "a general purpose computer," while the claim at issue "require[d] that the data processing means . . . be programmed to carry out certain steps"); *Roche Diagnostics Corp. v. Apex Biotech. Corp.*, 455 F. Supp. 2d 840, 849–850 (S.D. Ind. 2005) (although "there [wa]s no dispute" that "'processor' has a well-known meaning in the art," the means-plus-function presumption was not rebutted because the structure necessary to perform the disclosed function was not a "general purpose" processor but a special purpose processor programmed to perform biosensing procedures). That one skilled in the art might be aware of specific algorithms that could be used to program "portable processing means" to carry out the claimed functions does not mean that the term overcomes the means-plus-function presumption. *See Cummins-Allison Corp. v. Glory, Ltd.*, No. 02-cv-7008, 2005 WL 711991, at *11 (N.D. Ill. Mar.

28, 2005) (although those skilled in the art would be aware of specific algorithms with which the "signal processing means" could be programmed to perform the recited currency-counting function, the term, by itself, did not connote sufficient structure to perform the recited function and therefore did not overcome the means-plus-function presumption); *see also WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348 (Fed. Cir. 1999) ("A general purpose computer, or microprocessor, programmed to carry out an algorithm creates a new machine, because a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions for program software.").

Brown cites *Data General Corp. v. International Business Machines Corp.*, 93 F. Supp.2d 89, 96 (D. Mass. 2000), as an example of a case in which the term "processor means" was not subject to means-plus-function analysis. But as this court explained in the April 15, 2009 order, the *Data General* court reached this conclusion because the claimed function was generic and could be performed by a general-purpose "processor." The court in *Data General Corp.* found that the claimed functions, including "1) providing memory commands, 2) providing and receiving data items which are sequences of instructions and 3) executing those sequences of instructions," were all functions that would be encompassed by the generic "processor" as understood by one skilled in the art and did not require special programming. *Id.* at 97.

Two other cases that Brown cites (for the first time) are similar. In *Ferguson Beauregard/Logic Controls v. Mega Systems, L.L.C.*, No. Civ. A. 6:99-437, 2001 WL 37441614, at \*\*43–51 (E.D. Tex. Dec. 31, 2001), *rev'd on other grounds*, 350 F.3d 1327 (Fed. Cir. 2003), the court stated, in *dicta*, that "processor means" connoted sufficient structure to overcome the means-plus-function presumption. But as in *Data General*, the claimed functions involved receiving inputs

from other, separately defined structures and producing outputs as determined by those separately defined structures. The "processor means" itself was not required to perform any specialized functions. In *Genlyte Thomas Group LLC v. Lutron Electronics Co.*, No. Civ. A. 3:02-cv-0602, 2004 WL 690847, at **17–18 (N.D. Tex. Mar. 31, 2004), the court held that "central processing means" overcame the means-plus function presumption. The claimed function in that case involved changing the lighting in a room in accordance with inputs from a separately defined control program. As in *Data General* and *Ferguson*, the processor did not require special programming to perform the claimed function. The *Lutron* court also concluded that the term "central processing means," as used in another claim of the patent at issue, did not overcome the means-plus-function presumption because the processing means itself had to be programmed to perform the specialized functions of monitoring light controls and transferring data codes from one linked control to another. *Id.* at *13.

The term "portable processing means," as used in the '713 Patent, does not connote sufficient structure to perform the extensive specialized functions recited in the claim, and therefore does not overcome the means-plus-function presumption.

      **B.**      **The Specification Does Not Disclose Sufficient Structure for "Portable Processing Means"**

Brown argues in the alternative that if "portable processing means" is a means-plus-function term, the corresponding structure disclosed in the specification is "a type of processor that is compatible with a portable computer small in size and equipped with a barcode reader, such as Telxon Corporation Model PTC-701 or the Advanced Pocket Computer by Hand Held Products or their equivalents." (Docket Entry No. 151 at 4). Brown concedes that the general purpose processors compatible with such devices would not be capable, without more, of performing the

specialized functions for the "portable processing means" recited in the claim, but argues that these processors are capable of running software that would perform these specialized functions. (*Id.* at 6). Brown submits, for the first time, a declaration of a software engineer, Brian A. Berg, who identifies himself as a retained expert. Berg states that "[t]he term 'portable processing means' used in the '713 Patent is well understood in the art . . . to encompass the ability of a general purpose microprocessor operating in a portable computer to run software that performs some set of functions." (*Id.*, Berg. Decl. ¶ 4). Berg cites an operator's guide for the Telxon device, which states that the device must be "custom programmed for each application." (*Id.*, Berg. Decl. ¶ 5). Berg cites a product overview of the Hand Held Products device for the proposition that this device is compatible with "Application Software that could be developed for the device." (*Id.*, Berg Decl. ¶ 8).

Brown's arguments and Berg's declaration only underscore the fact that the structure disclosed in the specification corresponding to "general processing means" is not sufficient to perform the functions claimed in the '713 Patent. Brown concedes that the structure for "portable processing means" disclosed in the specification – a processor compatible with the Telxon or Hand Held Products devices – is a general-purpose structure that would require special software to perform the claimed functions. As this court noted in the April 15, 2009 order, no such software is disclosed in the specification.

The Federal Circuit specifically rejected the argument that Brown now asserts. In *WMS Gaming Inc. v. International Game Technology*, 184 F.3d at 1348, the plaintiff contended that the corresponding structure for the claimed "means for assigning" numbers in an electronic slot machine program was a general purpose computer programmed with any algorithm that would perform the

recited function.  The Federal Circuit rejected the plaintiff's argument, concluding that in a means-plus-function claim, "[a] general purpose computer, or microprocessor, programmed to carry out an algorithm creates a new machine, because a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions for program software." *Id.* (citations and quotation omitted).  The structure that the specification must disclose is therefore "not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm."  *Id.* at 1349.  The court limited the structure associated with "means for assigning" to the single algorithm disclosed in the specification.  *Id.* at 1349.

The Federal Circuit recently reaffirmed the *WMS Gaming* principle in *Aristocrat Technologies PTY Ltd. v. International Game Technology*, 521 F.3d 1328 (Fed. Cir. 2008).  The court observed:

> In cases involving a computer-implemented invention in which the inventor has invoked means-plus-function claiming, [the Federal Circuit] has consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor.  The point of the requirement that the patentee disclose particular structure in the specification and that the scope of the patent claims be limited to that structure and its equivalents is to avoid pure functional claiming.

*Id.* at 1333.  The Federal Circuit upheld the district court's conclusion that because no algorithm was disclosed in the specification to perform the functions recited for the claim at issue – "control means" for determining winning combinations in an electronic slot machine – the term lacked corresponding structure in the specification and was invalid.  *Id.* at 1338; *see also Harris v. Ericsson*, 417 F.3d 1241, 1253 (Fed. Cir. 2005) ("A computer-implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof,

10

and the corresponding structure is the algorithm."). Similarly, in *Gobeli Research, Ltd. v. Apple Computer, Inc.*, 384 F. Supp. 2d 1016 (E.D. Tex. 2005), the court rejected the argument that a general purpose computer identified in the claim and the corresponding structure was sufficient to perform the claimed function because the specification did not set out any algorithm needed to do so. Such a construction, the court stated, "attempts to adopt the type of structure that was specifically overturned in *WMS Gaming*." *Id*. at 1023.

Brown does not challenge this court's conclusion that the specification of the '713 Patent does not disclose the particular programming or software that would be required to make the general-purpose "portable processing means" perform the recited function. The specification of the '713 Patent does not disclose sufficient structure to perform the functions for "portable processing means" recited in the claim. Brown's motion for reconsideration of this issue is denied.

### C.     The Patent Prosecution History Provides No Basis for Reconsideration

The parties submitted extensive briefing on the claim construction issues in the '713 Patent and offered substantial information and evidence at the *Markman* hearing. Neither party referred to the prosecution history of the '713 Patent. Brown now argues, for the first time, that the claim terms must be presumed valid because the patent examiner for his patent application, who revised and drafted the patent's claim (drawing from components of rejected claims), opined that the claim, as revised, was patentable. Brown argues that he "took the examiner's advice, relying on his expertise and level of skill in the art," and that "[i]t is hard to believe that an examiner would draft a claim that did not have sufficient structure in the specification." (Docket Entry No. 151 at 8).

As an initial matter, the patent examiner's opinion is not a proper basis for a motion for reconsideration. The prosecution history was available to Brown at the time of the original claim

construction motions and *Markman* hearing. Assuming, however, that the prosecution history was presented initially, it would not change the result of this court's April 15, 2009 order. It is true that "a patent is presumed valid, in part because of the expertise of patent examiners and the presumption that they have done their jobs properly." *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1329 (Fed. Cir. 2004) (citing *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574 (Fed. Cir. 1992)). But this presumption is rebuttable. And a patent examiner's finding of validity carries less weight on issues that the patent examiner did not specifically consider. *See, e.g., B.W.B. Controls, Inc. v. U.S. Indus., Inc.*, 626 F. Supp. 1553, 1568 (E.D. La. 1985) (the presumption of validity is weakened when the challenge is based on prior art that the patent examiner did not consider).

The materials that Brown cites reveal that the patent examiner redrafted the claim of what would become the '713 Patent after rejecting four other claims that were "clearly anticipated" by the prior art. The patent examiner stated that the new claim was sufficient to "distinguish patentab[ility] over the art of record in this application." (Docket Entry No. 151, Boone Decl., Ex. 2). The patent examiner did not address whether the term "portable processing means" connoted sufficient structure to overcome the means-plus-function presumption or whether the specification of the proposed patent disclosed sufficient structure to perform the recited function.

The relevant case law, including recent precedent from the Federal Circuit, shows that "portable processing means" as used in the claim of the '713 Patent does not overcome the means-plus-function presumption and that the specification does not disclose sufficient structure to perform the functions for "portable processing means" recited in the claim. The presumption that the patent examiner's assessment of validity was correct, weakened by the fact that he did not specifically

address these issues, does not defeat the effect of this clear precedent. Brown's motion for reconsideration based on the patent examiner's opinion is denied.

**IV.     Conclusion**

Brown's motion for reconsideration is denied.

SIGNED on May 11, 2009, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge