IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JACK BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-0372 |
| | § | |
| BAYLOR HEALTH CARE | § | |
| SYSTEM, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

In this patent infringement suit, the defendants, Baylor Health Care System, Children's Medical Center of Dallas, Harris Methodist H-E-B, IASIS Healthcare L.L.C., and St. Luke's Episcopal Health System seek summary judgment that the sole claim of U.S. Patent No. 4,857,713 ("the '713 Patent") is invalid for indefiniteness under 35 U.S.C. § 112, ¶2. (Docket Entry Nos. 156, 157). This court has already concluded that the term "portable processing means" in the claim is a means-plus-function term under 35 U.S.C. § 112, ¶ 6, and that the specification does not disclose sufficient structure to perform the recited functions. (Docket Entry Nos. 148, 155). The plaintiff, Jack Brown, opposes summary judgment, contending that the claim is not indefinite and is valid. (Docket Entry No. 158). The defendants have replied. (Docket Entry No. 160).

Based on a careful review of the motion, the response, and reply; the record; and the applicable law, this court grants the defendants' motion for summary judgment. Final judgment is entered by separate order. The reasons for this ruling are explained below.

**I.      Background**

Although the factual and procedural background were set out in detail in this court's prior opinions, the relevant facts are set out again here for ease on review.

### A.      The '713 Patent

The '713 Patent is directed to reducing errors in the delivery of medications, goods, services, or procedures to patients. The system includes a patient wrist identification band with a preprinted barcode, a "portable computer means" equipped with a "portable barcode reading means," a "host computer means," and a "communication link means" between the host computer and the portable computer. Under the system, when a health care worker gives a patient an item such as medications, goods, services, or procedures, the worker uses a portable barcode reader to scan a barcode on the item and a barcode on the patient's hospital identification band. The system compares the two barcodes and uses the information contained in a "patient history file" and a "physician instruction file" to verify that the patient is receiving the correct medicine, service, good, or procedure, in the correct dose and at the correct time. The system issues a warning if there is an error. If the medication or other treatment is given, the system updates the patient history file to show what was administered and when.

Brown applied for the '713 Patent in February 1986; it issued in August 1989. The '713 Patent's single claim is as follows:

> A hospital error limiting system employing bar codes for identifying patients, medications, goods, services and procedures comprising:
>
> host computer means for maintaining a patient history file, which indicates when particular medications, goods, services or procedures were delivered to a particular patient in the past, and a physician instruction file, which indicate[s] what particular medications, goods, services or procedures are to be given to a particular patient at a particular time interval.
>
> communication link means to link said host computer means to a

2

portable computer means for transferring said patient history file and said physician instruction file between said host computer means and said portable computer means.

wherein said portable computer means comprises a portable memory means for storing said patient history file and said physician instruction file, portable bar code reading means for identifying a patient by reading a bar code provided to said patient, and for identifying medications, goods, services or procedures proposed to be delivered to said patient, by reading a bar code provided on said medications, goods, services or procedures,

**portable processing means** for **processing** the bar codes read by said portable bar code reading means so as to determine if said identified medications, goods, services or procedures are permitted to be delivered to said identified patient, according to said patient history file and said physician instruction file in said portable memory means, and for updating said patient history file in said portable memory means if said identified medications, goods, services or procedures are permitted to be delivered to said identified patient,

wherein said determination requires that said identified medications, goods, services or procedures are related to said identified patient in said physician instruction file in the portable memory means and that said identified medications, goods, services or procedures would be delivered to said identified patient at an appropriate time according to when identified medications, goods, services or procedures were last[ ] delivered to the identified patient in the past as indicated in the patient history file in the portable memory means and according to the time interval in said physician instruction file in said portable memory means to grant permission to deliver said identified medications, goods, services or procedures, and portable display means for indicating the determination of said portable processing means,

Wherein said patient history file in said host computer means is updated periodically by transferring said updated patient history file in said portable computer means to said host computer means via said communication link means.

(Docket Entry No. 132, Ex. A, col. 4 ll. 5–62) (emphasis added).

**B.   Procedural Background**

3

This court construed the disputed terms of the '713 Patent claim in the April 15, 2009 order issued after a *Markman* hearing.  This court found that functions recited for the term "portable processing means" included: processing barcodes on patient wristbands and on labels for medications, goods, services, or procedures; reading patient history and physician instruction files; determining, based on these files, whether medications, goods, services, or procedures identified by the barcodes are permitted to be delivered to the particular patient identified by the wristband barcode; and determining the time for delivery of medications, goods, services, or procedures to a particular patient according to the time of last delivery as listed in the patient history file and according to the time interval prescribed in the physician instruction file.  (Docket Entry No. 148 at 22).  Based on these recited functions, this court held that the term "portable processing means," as used in the '713 Patent claim, described a special-purpose computer that must be programmed to enable it to perform these specialized functions.  (*Id.*).  This court determined as a matter of law that the term "portable processing means," as used in the '713 Patent, did not connote sufficient structure to allow one of ordinary skill in the art to perform the specific functions recited in the claim and therefore did not overcome the means-plus-function presumption under 35 U.S.C. § 112, ¶ 6.  (*Id.*).  Finally, this court determined as a matter of law that the specification of the '713 Patent did not disclose sufficient structure to perform the specialized functions recited in the claim.  (*Id.* at 26).

Brown moved for reconsideration, arguing that the term "portable processing means" connotes sufficient structure to overcome the means-plus-function presumption and that even if the means-plus-function analysis applies, the specification discloses sufficient structure to perform the recited functions.  Brown argued that the specification discloses two devices that include microprocessors and would be capable of running software to perform the specialized functions.

4

(Docket Entry No. 151).  This court denied the motion, concluding after additional review that "portable processing means" as used in the '713 Patent does not connote sufficient structure to overcome the means-plus-function presumption and that the specification does not disclose sufficient structure to perform the recited functions of the "portable processing means."  (Docket Entry No. 155).

The defendants now move for summary judgment, arguing that the sole claim of the '713 Patent is invalid for indefiniteness under 35 U.S.C. § 112, ¶ 2 because the patent fails to disclose structure corresponding to the claimed "portable processing means."  (Docket Entry No. 157 at 1). Brown contends that the claim is not indefinite under § 112, ¶ 2.  (Docket Entry No. 158 at 4).

## II.    The Legal Standards

### A.    Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Triple Tee Golf*, *Inc. v.  Nike*, *Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *See Celotex*, 477 U.S. at 325.  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State*

*of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

"Summary judgment is as appropriate in a patent case as in any other.  Where no issue of material fact remains and the movant is entitled to judgment as a matter of law, the court should utilize the salutary procedure of FED. R. CIV. P. 56 to avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources."  *Barmag Barmer Maschinenfabrik AG v. Murata Machinery*, *LTD*., 731 F.2d 831, 835 (Fed. Cir. 1984); *see also Processed Plastic Co. v. U.S.,* 395 F. Supp. 2d 1296, 1299 (C.I.T. 2005*), aff'd*, 473 F.3d 1164, 1173 (Fed. Cir. 2006) ("[T]he Court of Appeals has hailed summary judgment as a 'salutary procedure . . . to avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources.'") (quoting *Barmag*, 731 F.2d at 835)).

**B.     Indefiniteness**

6

Section 112, ¶ 2 provides that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  35 U.S.C. § 112, ¶ 2.  "The primary purpose of the definiteness requirement is to ensure that the claims are written in such a way that they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, e.g., competitors of the patent owner, can determine whether or not they infringe.  That determination requires a construction of the claims according to the familiar canons of claim construction."  *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1340 (Fed. Cir. 2003) (citing *All Dental Prodx, LLC v. Advantage Dental Prods.*, 309 F.3d 774, 779–80 (Fed. Cir. 2002) (citations omitted)).  "One of those canons is that claims are construed as one skilled in the art would understand them in light of the specification of which they are a part."  *Id*. at 1340–41 (citing *Orthokinetics, Inc. v. Safety Travel Chairs, Inc*., 806 F.2d 1565, 1575 (Fed. Cir. 1986)).

If an applicant uses means-plus-function language in a claim under § 112, ¶ 6, he "must set forth in the specification an adequate disclosure showing what is meant by that language.  If an applicant fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112."  *Tech. Licensing Corp. v. Videotek, Inc*., 545 F.3d 1316, 1338 (Fed. Cir. 2008) (quoting *In Re Donaldson Co*., 16 F.3d 1189, 1195 (Fed. Cir. 1994) (en banc)).  If a claim includes a means-plus-function limitation, failure to disclose adequate structure corresponding to the claimed function results in invalidity for indefiniteness.  *In re Dossel*, 115 F.3d 942, 946 (Fed. Cir. 1997); s*ee also Budde v. Harley-Davidson, Inc*., 250 F.3d 1369, 1376 (Fed. Cir. 2001) ("For a court to hold that a claim containing a means-plus-function limitation lacks a disclosure of structure in the patent specification that performs the claimed function, necessarily means that the court finds the claim in

question indefinite, and thus invalid."); *Cardiac Pacemakers, Inc. v. St. Jude Med. Inc.*, 296 F.3d 1106, 1114 (Fed Cir. 2002); *Aristocrat Techs. Australia PTY Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1331 (Fed. Cir. 2008), *cert. denied*, --- U.S. ----, 129 S.Ct. 754 (2008).

An issued patent comes with a statutory presumption of validity under 35 U.S.C. § 282. "[A]n alleged infringer who raises invalidity as an affirmative defense has the ultimate burden of persuasion to prove invalidity by clear and convincing evidence, as well as the initial burden of going forward with evidence to support its invalidity allegation." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009) (citing *Tech. Licensing Corp.*, 545 F.3d at 1327). "Thus, a challenge to a claim containing a means-plus-function limitation as lacking structural support requires a finding, by clear and convincing evidence, that the specification lacks disclosure of structure sufficient to be understood by one skilled in the art as being adequate to perform the recited function." *Budde*, 250 F.3d at 1376–77.

A determination of claim indefiniteness is a legal conclusion reached by the court performing its duty as the "construer of patent claims." *Tech. Licencing Corp.*, 545 F.3d at 1338 (citing *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998)). "To the extent there are any factual findings upon which a trial court's indefiniteness conclusion depends, they must be proven by the challenger by clear and convincing evidence." *Id.* (citing *Intel Corp. v. VIA Techs., Inc*., 319 F.3d 1357, 1366 (Fed. Cir. 2003)).

## C.     Means-Plus-Function Claims

Section 112, ¶ 6 provides that "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112(6). A

means-plus-function claim format allows a patentee to "describe an element of his invention by the result accomplished or the function served, rather than describing the item or element to be used." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 27 (1997).   A patentee's use of the word "means" in a claim element that recites a function creates a presumption that the element is drafted in means-plus-function format. *Id.*; *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259 (Fed. Cir. 2008).   This presumption can be rebutted if the claim itself recites sufficient structure to accomplish the functions identified in the claim. *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1096 (Fed. Cir. 2008); *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.2d 1354, 1360 (Fed. Cir. 2004).

"Sufficient structure exists when the claim language specifies the exact structure that performs the functions in question without need to resort to other portions of the specification or extrinsic evidence for an adequate understanding of the structure." *TriMed*, 514 F.3d at 1259–1260. A claim may recite sufficiently definite structure if it has "an understood meaning in the art" that connotes enough structure to fall outside section 112, ¶ 6 or if it is "'used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures.'" *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 288 F. App'x 697, 703 (Fed. Cir. 2008) (quoting *Lighting World*, 382 F.3d at 1359–1360)).

If means-plus-function analysis applies, a court must first determine what the claimed function is and then determine the corresponding structures disclosed in the specification that perform that function. *Welker Bearing*, 550 F.3d at 1097; *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1377 (Fed. Cir. 2008); *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1208 (Fed. Cir. 2002).   Whether the written description adequately sets forth structure corresponding to the claimed function must be considered from the perspective of a person skilled in the art. *Intel Corp.*,

319 F.3d at 1365–66 (citing *Budde*, 250 F.3d at 1376).  The question is not whether one of skill in the art would be capable of implementing a structure to perform the function, but whether that person would understand the written description itself to disclose such a structure.  *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 953 (Fed. Cir. 2007) (citing *Med. Instr. & Diagnostics Corp. v. Elekta AB,* 344 F.3d 1205, 1212 (Fed. Cir. 2003)).

**III.    Analysis**

Brown does not dispute that if "portable processing means" is a means-plus-function term subject to §112, ¶ 6, and if the specification does not provide structure sufficient to perform the functions recited for the term, then the defendants are entitled to summary judgment on the basis of invalidity under § 112, ¶ 2.  But Brown urges that this court reconsider its conclusions as to these premises.  Brown contends that the term "portable processing means" does connote sufficient structure to overcome the means-plus-function presumption in § 112, ¶ 6.  (Docket Entry No. 158 at 7–8).  Brown also contends that if "portable processing means" is a means-plus-function term, the general purpose hand-held computers disclosed in the specification, including the Model PTC-701 manufactured by Telxon Corporation and the Advanced Pocket Computer manufactured by Hand Held Products, are capable of running specialized software that would perform the recited functions, and that the specification therefore discloses sufficient structure.  (*Id*. at 5–7).  Brown also points to the declaration of Brian A. Berg, a software specialist whom Brown retained as an expert.  Berg states that, in his opinion, the hand-held computers disclosed in the specification would be capable of performing the recited functions if loaded with the appropriate software.  (*Id*. at 7–9).  Finally, Brown points to the fact that the patent examiner revised and redrafted the '713 Patent's claim and argues that it is "difficult to understand how an examiner would draft a clam that did not have sufficient structure support in the specification."  (*Id*. at 5).

10

These are not new arguments.  This court carefully examined all these arguments once, and some twice, in the April 15, 2009 claim construction order (Docket Entry No. 148) and the May 11, 2009 reconsideration opinion (Docket Entry No. 155), and gave detailed reasons for concluding that these arguments failed.  None of these arguments provides a basis for reconsidering the conclusions that "portable processing means" is a means-plus-function term or that the specification lacks sufficient structure to perform the recited functions.  None of these arguments raises a fact issue as to invalidity for indefiniteness.

A.    **"Portable Processing Means" Does Not Overcome the Means-Plus-Function Presumption**

Brown contends that the term "portable processing means" as used in the '713 Patent "is a structural term well known to those skilled in the art of computers to be a central processing unit of a computer," and therefore overcomes the means-plus-function presumption.  (Docket Entry No. 158 at 8).  However, as this court has already noted, the issue is not simply whether "portable processing means" has an understood meaning in the art, but whether "portable processing means," as understood in the art, connotes sufficient structure to perform the specific functions recited for that term in the '713 Patent claim.  (Docket Entry No. 155 at 5).  A claim recites sufficient structure "when the claim language specifies the exact structure that performs the functions in question without need to resort to other portions of the specification or extrinsic evidence for an adequate understanding of the structure." *TriMed*, 514 F.3d at 1259–1260.  "Processing means" in the '713 Patent describes a special-purpose computer programmed to perform an extensive set of specialized functions, including processing barcodes on patient wristbands and determining, based on patient history files, whether particular medications, goods, services, or procedures identified by the barcodes are permitted to be delivered to the particular patient identified by the wristband, at a

11

particular time. (Docket Entry No. 148 at 22). The general-purpose structure that "portable processing means" conveys to one of ordinary skill in the art could not accomplish these functions without special programming. The term does not overcome means-plus-function analysis.

This conclusion is supported by the substantial case law authority cited in the prior opinions in this case. *See, e.g., Centillion Data Sys., LLC v. Convergys Corp.*, 529 F. Supp. 2d 982, 997–98 (S.D. Ind. 2008) (concluding that the term "data processing means" in a patent claiming the function of "generating and organizing" "summary reports" in a credit-card billing system did not overcome the means-plus-function presumption because the term merely identified "a general purpose computer," while the claim at issue "require[d] that the data processing means . . . be programmed to carry out certain steps"); *Roche Diagnostics Corp. v. Apex Biotech. Corp.*, 455 F. Supp. 2d 840, 863–64 (S.D. Ind. 2005) (although "there [wa]s no dispute" that "'processor' has a well-known meaning in the art," the means-plus-function presumption was not rebutted because the structure necessary to perform the disclosed function was not a "general purpose" processor but a special-purpose processor programmed to perform biosensing procedures). That one skilled in the art might be aware of specific algorithms that could be used to program "portable processing means" to carry out the claimed functions does not mean that the term overcomes the means-plus-function presumption. *See Cummins-Allison Corp. v. Glory, Ltd.*, No. 02-cv-7008, 2005 WL 711991, at *11 (N.D. Ill. Mar. 28, 2005) (although those skilled in the art would be aware of specific algorithms with which the "signal processing means" could be programmed to perform the recited currency-counting function, the term, by itself, did not connote sufficient structure to perform the recited function and therefore did not overcome the means-plus-function presumption); *see also WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348 (Fed. Cir. 1999) ("A general purpose computer, or microprocessor, programmed to carry out an algorithm creates "a new machine,

because a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software.") (quoting *In re Alappat*, 33 F.3d 1526, 1545 (Fed. Cir. 1994) (en banc)).

Brown's summary judgment opposition cites no case law to the contrary. (Docket Entry No. 158 at 7–8). Brown cites *Philips v. AWH Corp.*, 415 F.3d 1303, 1311 (Fed. Cir. 2005) for the well-accepted rule that "[m]eans-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited function." In *Phillips*, the claim recited a "means . . . for increasing load bearing capacity [of the outer shell of the claimed building modules] comprising internal steel baffles extending inwardly from the steel shell walls." *Id*. at 1310–11. The Federal Circuit found that the claims and the specification unmistakably established that the claimed "steel baffles" referred to a particular structure. The claim characterized the baffles as "'extend[ing] inwardly' from the steel shell walls, which plainly implie[d] that the baffles [were] structures. The specification likewise [made] clear that the term "steel baffles" refer[red] to particular internal wall structures *and [were] not simply a general description of any structure that [would] perform a particular function*." *Id*. at 1311 (emphasis added). Unlike a general-purpose computer that must be specially programmed to perform a set of specialized functions, the steel baffles required no additional alterations to serve the mechanical function of increasing the shell's load-bearing capacity. *Phillips* does not affect this court's conclusion that the term "portable processing means," without more, does not connote sufficient structure to perform the specialized functions recited in the claim.

Brown also cites *Envirco Corp. v. Clestra Cleanroom, Inc.*, 209 F.3d 1360, 1365 (Fed. Cir. 2000), a case that this court addressed in the April 15, 2009 claim-construction order. (Docket Entry No. 148 at 16–17). In *Envirco*, the Federal Circuit found that the term "second baffle means"

connoted sufficient structure to rebut the means-plus-function presumption because "the term "baffle" itself is a structural term [defined in the dictionary as] a device (as a plate, wall or screen) to deflect, check, or regulate flow," and "the claims describe[d] the particular structure of this particular baffle ("having inner surfaces for directing airflow . . . radially outward . . . and thereafter . . . between said first baffle means and said air filter means")."  209 F.3d at 1365.  As in *Phillips*, the term itself supplied a structure that could perform the claimed functions without additional alterations or enhancements.  Both cases are distinguishable and do not support the argument that a person of ordinary skill in the art would have understood the words "portable processing means," without more, to supply a sufficiently specific structure to perform the functions recited in the '713 Patent.

Brown's renewed arguments as to the structure connoted by "portable processing means" do not provide a basis for concluding that the term overcomes the means-plus-function presumption. These arguments do not provide a basis for denying summary judgment.

### B.    The Specification Does Not Disclose Sufficient Structure for "Portable Processing Means"

Brown contends that even if "portable processing means" is a means-plus-function term, the corresponding structure disclosed in the specification—"a type of processor that is compatible with a portable computer small in size and equipped with a barcode reader, such as the Telxon Corporation Model PTC-701 or the Advanced Pocket Computer by Hand Held Products or their equivalents"—connotes sufficient structure.  (Docket Entry No. 158 at 5–7).  Brown points out that the Telxon device includes a microprocessor and can be loaded with software applications developed to perform the specific set of functions required of the "portable processing means."  (*Id*. at 6). Brown also asserts that the Hand Held Products device contains a microprocessor that a person of

14

ordinary skill in the art would understand can be loaded with "Applications Software that could be developed for the device." (*Id*. at 7). Brown argues that once these devices have been programmed, they become "special purpose computers programmed to perform specific algorithms" and supply sufficient corresponding structure to make the term "portable processing means" definite under §112, ¶2. (*Id*.). Brown does not contend that the specification discloses the software or the coding with which these devices would be programmed.

The "portable processing means" must perform the specialized functions of processing barcodes on patient wristbands and on labels for medications, goods, services, or procedures; reading patient history and physician instruction files; determining, based on these files, whether medications, goods, services, or procedures identified by the barcodes are permitted to be delivered to the particular patient identified by the wristband barcode; and determining the time for delivery of medications, goods, services, or procedures to a particular patient according to the time of last delivery as listed in the patient history file and according to the time interval prescribed in the physician instruction file. (Docket Entry No. 148 at 22). The '713 Patent does not disclose the programming or special software that would be required to make the general-purpose "portable processing means" perform these functions.

The declaration of Brown's expert, Brian Berg, stating that "the term 'portable processing means' used in the '713 Patent is well understood in the art, and would be understood by one of ordinary skill in the art at the time of the invention to encompass the ability of a general purpose microprocessor operating in a portable computer to run software that performs some set of functions," does not support a different conclusion. (Docket Entry No. 158 at 7). Berg's statement reveals only that he would have understood the term "portable processing means" to indicate a general-purpose microprocessor operating in a portable computer that *could be made* to run software

that *could potentially perform* "some set of functions."  The Federal Circuit has made it clear that disclosing a general-purpose computer capable of running specialized software, without more, does not supply sufficient structure for means-plus-function claims involving a computer that must be specially programmed to perform a specific set of functions.  *See WMS Gaming,* 184 F.3d at 1349. The structure that the specification must disclose is "not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm." *Id.*; *see also Harris Corp. v. Ericsson*, *Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005) ("A computer-implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof, and the corresponding structure is the algorithm."); *Gobeli Research Ltd. v. Apple Computer, Inc*., 384 F. Supp. 2d 1016, 1022 (E.D. Tex. 2005) ("The Federal Circuit has made clear that when software is linked to the disclosed function, the structure for performing the function is limited to the algorithm disclosed in the specification") (citing *WMS Gaming*, 184 F.3d at 1348–49; *Harris*, 417 F.3d at 1253).

In *Finisar Corp. v. DirecTV Group, Inc*., 523 F.3d 1323, 1340-41 (Fed. Cir. 2008), *cert. denied*, --- U.S. ----, 129 S.Ct. 754 (2008), the Federal Circuit reaffirmed that specification language describing the function for a program or algorithm recited in the claim does not disclose sufficient structure for that program or algorithm.  The claim at issue in *Finisar* involved "an information database" and "database editing means, coupled to said one or more computer memory devices, for generating a hierarchically arranged set of indices for referencing data in said information database, including distinct indices for referencing distinct portions thereof, and for embedding said indices in said information database." *Id*. at 1340.  The patent specification described the "database editing means" as "software . . . (executed by CPU . . . ) [that] generates a hierarchical set of indices referencing all the data in the information database . . . and embeds those indices in the information

database." *Id*.  The specification also described an alternate embodiment in which "a block of packet ID values are assigned to an off-line information provider, which then organizes them into a database." *Id*.  The Federal Circuit affirmed the district court's conclusion that these descriptions in the specification provided "nothing more than a restatement of the function, as recited in the claim" and did not provide an "algorithm or description of structure corresponding to the claimed function." *Id.*  The Federal Circuit held that although a patentee may express an algorithm "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure," the descriptions in the specification did "not even meet the minimal disclosure necessary" to supply a structure for "database editing means." *Id*. (internal citation omitted).  The Federal Circuit concluded: "This court does not impose a lofty standard in its indefiniteness cases.  But in this case, the claims are already quite vague.  Without any corresponding structure, one of skill simply cannot perceive the bounds of the invention. Thus the district court did not err in adjudging [the claims] invalid for indefiniteness." *Id*. at 1341 (citations removed).

Another recent Federal Circuit case, *Aristocrat Technologies Australia PTY Ltd. v. International Game Technology*, 521 F.3d 1328 (Fed. Cir. 2008), *cert. denied*, --- U.S. ----, 129 S.Ct. 754 (2008), reached a similar result.  The claim in *Aristocrat* recited a "control means" for determining winning combinations in an electronic slot machine.  *Id*. at 1329.  The specification stated that the "control means" could be implemented "on any standard microprocessor base gaming machine by means of appropriate programming."  The specification also provided an equation that expressed the mathematical result of performing the "control means" function and presented figures and tables describing possible outcomes of that means function.  *Id.* at 1334–35.  The Federal Circuit concluded that these examples "disclosed, at most, pictorial and mathematical ways of describing

the claimed function of the game control means," which was "not enough to transform the disclosure

of a general-purpose microprocessor into disclosure of sufficient structure to satisfy section 112

paragraph 6." *Id*. at 1335.  The court stressed that it was not sufficient for section 112, ¶ 6 that the

examples in the specification "might enable one of ordinary skill to make and use the invention."

*Id*. at 1336.  The question was "whether one of skill in the art would understand the specification

itself to disclose a structure, not simply whether that person would be capable of implementing that

structure." *Id*. at 1337 (citing *Biomedino, LLC v. Waters Techs. Corp*., 490 F.3d 946, 953 (Fed. Cir.

2007); s*ee also Med. Instr. & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1212 (Fed. Cir. 2003)

("The correct inquiry is to look at the *disclosure* of the patent and determine if one of skill in the art

would have understood that *disclosure* to encompass software [with sufficient structure to perform

the recited function], not simply whether one of skill in the art would have been able to write such

a software program.") (emphasis in original).  As in *Finisar*, the court upheld the judgment of the

district court finding that the claims were invalid for indefiniteness.  *Id*. at 1338.

The Federal Circuit does not impose a "lofty standard" for the disclosure required to avoid

indefiniteness for means-plus-function claims involving computers that must be specially

programmed to perform the recited functions.  A patentee may express an algorithm "in any

understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any

other manner that provides sufficient structure." *Finisar*, 523 F.3d at 1340.  But the '713 Patent

claim does not meet the disclosure requirements the case law establishes.

Brown's reurged argument that the general-purpose computers disclosed in the patent could

be programmed to perform the recited functions does not provide a basis for concluding that the

specification discloses sufficient structure and does not provide a basis for denying summary

judgment of invalidity.

18

### C.    The Prosecution History Does Not Provide a Basis for Finding the Patent is Not Indefinite

Brown reurges the argument that he raised for the first time in his motion for reconsideration, that the prosecution history shows that the '713 Patent claim is not indefinite. Brown points out that the patent examiner drafted the final version of the claim and contends that "it is illogical, if not terribly unfair, to suggest that a claim drafted by an examiner, using means-plus-function language, could be indefinite." (Docket Entry No. 158 at 1).  Although it is true that "a patent is presumed valid, in part because of the expertise of the patent examiners and the presumption that they have done their jobs properly," *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1329 (Fed. Cir. 1992) (citing *Brooktree Corp. v. Advanced Micro Devices, Inc*., 977 F.2d 1555, 1574 (Fed. Cir. 1992)), this presumption may be rebutted by clear and convincing evidence.  *See PowerOasis, Inc. v. T-Mobile USA, Inc*., 522 F.3d 1299, 1305 (Fed. Cir. 2008) (citing *Ralston Purina Co. v. Far-Mar-Co, Inc.,* 772 F.2d 1570, 1573 (Fed. Cir.1985)); *see also Tech. Licensing Corp.*, 545 F.3d at 1327.  And a patent examiner's finding of validity carries less weight on issues that the examiner did not specifically consider.  *See, e.g., B.W.B. Controls, Inc. v. U.S. Indus, Inc.*, 626 F. Supp. 1553, 1568 (E.D. La. 1985) (the presumption of validity is weakened when the challenge is based on prior art that the patent examiner did not consider).  Brown cites *American Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1360 (Fed. Cir. 1984), for the proposition that the '713 Patent deserves a heightened presumption of validity because its sole claim was redrafted by the patent examiner.  (Docket Entry No. 158 at 5). *American Hoist* holds that "[w]hen an attacker simply goes over the same ground traveled by the PTO, part of the *burden* [of the challenger] is to show that the PTO was wrong in its decision to grant the patent."  725 F.2d at 1360 (emphasis in original).  But the court in *American Hoist* also made clear that "[d]eference is due the Patent and

Trademark Office decision to issue the patent with respect to evidence bearing on validity which it considered but no such deference is due with respect to evidence it did not consider." *Id.*

As this court noted in the reconsideration order, the prosecution history of the '713 Patent reveals that the patent examiner redrafted the claim after rejecting four other claims that were "clearly anticipated" by the prior art.  The patent examiner stated that the new claim was sufficient to "distinguish patentab[ility] over the art of record in this application."  (Docket Entry No. 151, Boone Decl., Ex. 2).  The patent examiner did not address whether the term "portable processing means" connoted sufficient structure to overcome the means-plus-function presumption or whether the specification of the proposed patent disclosed sufficient structure to perform the recited function. The presumption that the patent examiner's assessment of validity was correct, weakened by the fact that he did not specifically address these issues, does not change the result that is clearly dictated by the case law.

Brown's reurged argument as to the prosecution history of the '713 Patent does not provide a basis for concluding that "portable processing means" finds sufficient structure in the specification, and does not provide a basis for avoiding summary judgment.

### D.       The '713 Patent Is Invalid for Indefiniteness

If a court finds that the patent specification does not disclose corresponding structures that perform the claimed function for a means-plus-function term, this "necessarily means that the court finds the claim in question indefinite, and thus invalid."  *Budde*, 250 F.3d at 1376 (citing *In re Dossel*, 115 F.3d at 945); *see also Aristocrat*, 521 F.3d at 1331.  A patent is presumed to be valid under 35 U.S.C. § 282 and invalidity must be proven by clear and convincing evidence.  *Titan Tire Corp.*, 566 F.3d at 1376 (citing *Tech. Licensing Corp.*, 545 F.3d at 1327).

The record provides clear and convincing evidence that the '713 Patent is invalid.  The "portable processing means" as used in the sole claim of the '713 Patent does not overcome the means-plus-function presumption.  *See, e.g., Centillion Data Sys., LLC,* 529 F. Supp. 2d at 997–98; *Roche Diagnostics Corp.*, 455 F. Supp. 2d at 863–64.  The specification does not disclose sufficient structure to perform the functions for "portable processing means" recited in the claim.  *See, e.g., WMS Gaming*, 184 F.3d at 1339; *Harris*, 417 F.3d at 1241; *Finisar*, 523 F.3d at 1340–41; *Aristocrat*, 521 F.3d at 1328.  The prosecution history of the '713 Patent is entitled to deference, but it is not dispositive.  The history shows that the examiner did not specifically address the sufficiency of the specification when drafting the final claim.  Because "portable processing means" is a means-plus-function term, and the specification does not disclose sufficient corresponding structure, the claim is invalid for indefiniteness.

No genuine issues of fact remain as to whether the sole claim of the '713 Patent is invalid for indefiniteness.  The defendants are entitled to summary judgment.

## IV.   Conclusion

The defendants' motion for summary judgment is granted.  Final judgment is entered by separate order.

SIGNED on July 20, 2009, at Houston, Texas.

_____
Lee H. Rosenthal
United   States   District   Judge